UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

LINDA GORDON                              )
                                          )
                                          )
              Plaintiff,                  )
v.                                        )
                                          )          Civil No. 4:11-40104-TSH
                                          )
CAROLYN W. COLVIN,[1]                     )
Acting Commissioner,                      )
Social Security Administration,           )
                                          )
              Defendant.                  )
_____)

<u>**REPORT AND RECOMMENDATION**</u>
August 23, 2013

Hennessy, M.J.

By Order of Reference dated May 17, 2013, pursuant to 28 U.S.C. § 636(b)(1)(B) (Docket No. 25), this matter was referred to me for a Report and Recommendation on Plaintiff Linda Gordon's ("Gordon") Motion for Summary Judgment (Docket No. 14) and the Defendant's Motion to Affirm the Commissioner's decision. (Docket No. 17). These Motions are now ripe for adjudication.

Gordon brings this appeal against Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), for judicial review of the decision that she was overpaid Disability Insurance Benefits ("DIB").[2] (Docket No. 1). On March 6, 2012, Gordon filed a

---

[1] Under Fed. R. Civ. P. 25(d), as of February 14, 2013, Carolyn W. Colvin is substituted for Michael J. Astrue, the former Commissioner of the Social Security Administration.

[2] The parties also refer to DIB as Social Security Disability Insurance ("SSDI"). DIB and SSDI are synonymous with each other, however DIB and SSDI are not to be confused with Social Security Insurance ("SSI"). The legal standards applied to SSI and DIB/SSDI are the same, but separate, parallel statutes and regulations exist for SSI and DIB/SSDI claims. Therefore, citations in this Report and Recommendation should be considered to refer to the

Motion for Summary Judgment alleging that the case was improperly reopened and that she was not overpaid benefits because she did not perform substantial gainful activity ("SGA").  (Docket No. 14).  Conversely, the Commissioner filed a Motion to Affirm the Decision on the grounds that the case was properly reopened and the determination to cease benefits was supported by substantial evidence.  (Docket No. 17).

I.    BACKGROUND

Procedural History

In a determination dated August 13, 1996, Gordon was found disabled as of March 26, 1996 and was granted DIB.  (Tr. 24).  Gordon continued to receive DIB until December 19, 2004 when the Social Security Administration ("SSA") sent Gordon a Notice of Disability Cessation stating that Gordon was no longer entitled to DIB, and that her eligibility had in fact been revoked as of April 2003.[3]  (Tr. 33-36).  The Notice advised Gordon that, because she had continued to receive DIB from April 2003 through December 2004 despite her revoked eligibility, Gordon had been overpaid a total of $31,918.80 which she was required to refund.  (Tr. 33-34).

Upon reconsideration, the SSA affirmed the cessation of Gordon's benefits.  (Tr. 45-48).  Gordon then requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 53).  The request was granted, (Tr. 54, 58-61), and Gordon appeared before ALJ Judith M. Stolfo on February 6, 2008.  (Tr. 24).  On February 29, 2008, (Tr. 10), ALJ Stolfo issued a fully favorable decision for Gordon, finding that Gordon was still disabled and entitled to DIB, and therefore

_____

appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3] For purposes of determining whether the case was properly reopened, December 19, 2004 is considered the date of the initial decision.

had not been overpaid in the period of time between April 2003 and December 2004, (Tr. 24-27). Following this favorable determination, on October 10, 2008, the Appeals Council ("AC") notified Gordon that it planned on reopening the case and reversing ALJ Stolfo's decision, (Tr. 306), because it received a memorandum from Northeastern Program Service, (Tr. 301-02), outlining errors in ALJ Stolfo's decision.  (Tr. 306-07).   On February 10, 2009, following Gordon's request that the case be remanded for further findings, (Tr. 311), the AC vacated the hearing decision and remanded the case for further proceedings.  (Tr. 314-17).  On July 29, 2009, ALJ Addison C.S. Masengill made an unfavorable decision for Gordon, concluding that she was indeed overpaid.  (Tr. 10-18).   ALJ Masengill found that Gordon performed SGA as of May 2003 and, thus, was not entitled to DIB as of August 2003 and that her entitlement terminated October 2003.  (Tr. 11).   Following ALJ Masengill's finding, Gordon requested review of the decision by the AC, (Tr. 4-5), but the AC refused to reconsider the ALJ's determination, (Tr. 2-3).   Once the AC denied review, ALJ Masengill's determination became the Commissioner's final decision on the matter.  (Tr. 2).  On June 3, 2011, Gordon filed a complaint in this Court, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision. (Docket No. 1).

Gordon's Personal and Employment History

Gordon, who was 61 years old at the time of the hearing before ALJ Masengill, has a long history of mental illness. (Tr. 324-25).  She has been diagnosed with major panic disorder with agoraphobia and depression.  (Tr. 324).  These illnesses made it difficult for Gordon to function in a work environment, but, through various support systems, Gordon was able to remain gainfully employed until 1996. (Tr. 325, 327).  At that time, Gordon's conditions made it too difficult for her to work, (Tr. 325), so she sought and was granted DIB, (Tr. 24).  Almost

immediately thereafter, Gordon reentered the work force at approximately 3-4 hours a month, and increased her hours over the next several years.  (Tr. 327).  Then, in May 2003, Gordon began working full-time for the Mental Illness Education Project, (Tr. 327-28, 333), and continued to work this full-time position until March 2004 when she was terminated, (Tr. 334; see Tr. 304).  She stood in as CEO of the Mental Illness Education Project for months after her superior was unable to return to work.  (Tr. 40).  Gordon's earnings at the Mental Illness Education Project formed the basis for the cessation of her DIB.  She earned, on average, $5,700 per month while employed there.  (Tr. 304).  Gordon was unemployed from April 2004 until September 2004, but found temporary work in October 2004.  (Tr. 304).  Gordon was later terminated in July 2005, (Tr. 86), but, in February 2006, Gordon found employment and retained employment until at least the date of the hearing with ALJ Masengill on June 17, 2009, (Tr. 325).

Gordon's Medical History

Gordon has been diagnosed with bipolar disorder, severe and disabling phobias, serious and persistent depression, post traumatic disorder, and panic disorder with agoraphobia.  (Tr. 39).

II.    STANDARD OF REVIEW

The District Court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  The Court may not disturb the Commissioner's findings where they are supported by substantial evidence and the Commissioner has applied the correct legal standard. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  As such, the Commissioner and the ALJ are solely "responsib[le] for weighing conflicting evidence, where reasonable minds could differ as to the outcome."  Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001).  Courts have

construed substantial evidence to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  "[E]ven if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence," the Commissioner's determination must be upheld. <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987).  "Reversing an ALJ's decision is warranted in cases where the ALJ misapplied relevant law, ignored material evidence, or made evidentiary conclusions that are left within the purview of an expert witness." <u>Dunham v. Astrue</u>, No. 10-cv-40246-TSH, 2013 U.S. Dist. LEXIS 39455, at *21 (D. Mass. Mar. 21, 2013) (<u>citing</u> <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999)).

<u>Standard for Assessing Whether a Disability has Ended</u>

In order to qualify for DIB, claimants must demonstrate that they are disabled within the meaning of the Act.  The Act defines "disability" as having the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  A claimant's impairments must be so severe as to prevent him or her from performing not only past relevant work, but any substantial gainful work that currently exists in the national economy.  <u>Id.</u>

After a claimant has been deemed disabled, the appropriate rubric for determining whether a claimant remains disabled is through the eight-step evaluation process set forth in the Act.  20 C.F.R. § 404.1594(f).  The first step determines whether the claimant is performing SGA.  <u>Id.</u> § 404.1594(f)(1).  If the claimant is performing SGA, and any applicable trial work period ("TWP") has been exhausted, then the claimant will no longer be considered disabled.  <u>Id.</u>

Because this is the one and only dispositive issue in this case, the ALJ properly confined her

analysis to whether Gordon performed SGA and whether any applicable TWP had ended.[4]

III.    DISCUSSION

Gordon argues that the case was improperly reopened by the AC and that she did not

perform SGA.[5]   (Docket No. 15 at 4).  This Court finds that the case was properly reopened and

substantial evidence supports the Commissioner's decision that SGA was performed.[6]

---

[4]  The remaining steps of the eight-step evaluation process are as follows:

At step two, the ALJ considers whether the claimant has "an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1[.]"  Id. § 404.1594(f)(2).  If the claimant has such an impairment then the disability will be found to continue.  Id.  If the claimant does not have such an impairment, the ALJ must proceed to step three.

At step three, the ALJ asks whether "there [has] been medical improvement[.]"  Id. § 404.1594(f)(3).  Medical improvement is "any decrease in the medical severity of [the] impairment(s)…based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s)"  Id. § 404.1594(b)(1).  If medical improvement has occurred, the evaluation proceeds to step four.  Id. § 404.1594(f)(3).  If there has been no medical improvement, the evaluation skips to the fifth step.  Id.

At step four, it must be determined "whether [the medical improvement] is related to [the claimant's] ability to do work…i.e., whether or not there has been an increase in the residual functional capacity[.]"  Id. § 404.1594(f)(4).

If medical improvement is not related to the claimant's ability to work, or there is no medical improvement, at step five it must be determined whether any exceptions apply.[4]  Id. § 404.1594(f)(5).  If no exceptions apply, then the "disability will be found to continue."  Id.

On the other hand, if one of the first groups of exceptions apply, or if medical improvement is indeed related to the claimant's ability to work, then at step six it will be determined "whether all [the claimant's] current impairments in combination are severe."  Id. § 404.1594(f)(6).  If the current impairments are not severe, then the claimant will no longer be considered disabled.  Id.

At step seven, "[i]f [the claimant's] impairment(s) is severe … [the claimant's] current ability to do substantial gainful activity" will be reviewed.  Id. § 404.1594(f)(7).  The claimant's residual functional capacity ("RFC") will be assessed with respect to their current impairments, and the SSA will also "consider whether [the claimant] can still do work [the claimant has] done in the past.  If [the claimant] can do such work, [the SSA] will find that [the claimant's] disability has ended."  Id.

Finally, at step eight, if the claimant is not able to do work that they have done in the past, the SSA "will consider whether [the claimant] can do other work given the residual function capacity assessment … and [the claimant's] age, education and past work experience[.]"  Id. § 404.1594(f)(8).  If the claimant can do other work, then the SSA will find that the disability has ended.  Id.  If the claimant cannot do such work, the SSA will find that the disability continues.  Id.

[5]  In the event that this Court were to find that Gordon performed SGA, Gordon asserts that her requirement to repay the funds should be waived because she was not at fault for the overpayment.  (Docket No. 15 at 4).  A claimant

Reopening the Case

The AC may, on its own initiative, review a decision within sixty-days of the initial decision.  20 C.F.R. § 404.969(a).  If a case is not reviewed within the sixty-day period, it may still be reopened "[w]ithin 12 months of the date of the notice of the initial determination, for any reason."  Id. § 404.988(a).  The case may also be reopened even if the sixty-day and twelve-month periods expire if two criteria are satisfied.  First, the reopening must be within four years of the notice of the initial determination.  Id. § 404.988(b).  Second, there must be "good cause." Id.  Good cause exists if "[t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made."[7]  Id. § 404.989(a)(3).

Citing McCuin v. Secretary of Health and Human Services, Gordon asserts that it was improper for the AC to reopen the February 29, 2008 decision beyond the sixty-day period. (Docket No. 15 at 6-7).  In McCuin, the AC notified the plaintiff eight months after she had been awarded benefits that they were reopening her case pursuant to 20 C.F.R. § 404.988(b).  McCuin v. Sec'y of Health & Human Servs., 817 F.2d 161, 163 (1st Cir. 1987).  The plaintiff filed suit, claiming that the AC improperly reopened her case on its own initiative.  Id.  The First Circuit interpreted 20 C.F.R. §§ 404.987-989 to allow reopening on the motion of claimants, but not the AC.  Id. at 175.  The court stated that this interpretation comported with due process principles and effectuated the beneficent purposes of Congress in passing the Social Security statute authorizing the regulations.  Id. at 174-175.

---

may request waiver or adjustment of an overpayment pursuant to 20 C.F.R. § 404.506.  Such a request is not properly made to this Court in the first instance.

[6] Given this Court's finding that the case was properly reopened, the Defendant's contention that Gordon waived her argument against reopening is not addressed. (Docket No. 18 at 4).

[7] Other ways to demonstrate "good cause" are outlined in 20 C.F.R. § 404.989(a)(1)-(2), and other methods for reopening are provided for in 20 C.F.R. § 404.988(c)(1)-(11).

In <u>McCuin</u>, the First Circuit interpreted 20 C.F.R. § 404.987 as it read after the 1980 amendments; however, 20 C.F.R. § 404.987 was revised in relevant part by the 1994 regulatory revisions.  These 1994 revisions utilize pertinent language that was formerly included in the regulations but was omitted by the 1980 amendments.  Prior to 1980, the regulations provided: "an initial, revised, or reconsidered determination may be revised by the appropriate unit of the SSA…**on its own motion** or upon a petition of any party[.]"  20 C.F.R. § 404.956(a) (1978) (internal citations omitted) (emphasis added).  Similarly, the current regulations, pursuant to the 1994 amendments, provide: "[w]e may reopen a final determination or decision **on our own initiative**, or you may ask that a final determination or a decision to which you were a party be reopened."  20 C.F.R. § 404.987(b) (emphasis added).  Hence, although the First Circuit has not explicitly overruled <u>McCuin</u>, its interpretation of 20 C.F.R. § 404.987 is no longer applicable because the current regulations include pertinent language that was absent when it decided <u>McCuin</u>.  <u>See</u> <u>Nixon v. Barnhart</u>, No. 05-193-P-S, 2006 U.S. Dist. LEXIS 35854, at *12 (D. Me. June 1, 2006) ("<u>McCuin</u> simply cannot be stretched so far as to cover (and dictate the striking down of) the revised regulations."); <u>Scheuering v. Barnhart</u>, No. 02-418-M, 2003 U.S. Dist. LEXIS 12925, at *10 n.5 (D.N.H. July 25, 2003) ("At one time, the Court of Appeals for the First Circuit construed a previous version of 20 C.F.R. §§ 404.987-89 to bar the Appeals Council from reopening an ALJ's decision on its own initiative.  But subsequent revisions to 20 C.F.R. § 404.987 have effectively side-stepped <u>McCuin</u>.") (internal citations omitted).

In <u>McCuin</u>, the First Circuit also addressed due process concerns in connection with 20 C.F.R. § 404.987 as it read after the 1980 amendments.  <u>McCuin</u>, 817 F.2d at 172-175.  Gordon failed to directly allege that the current regulations permitting reopening violate due process, but, even if she had, this argument would fail.  In <u>McCuin</u>, the First Circuit found that its

interpretation of 20 C.F.R. § 404.987 allowing reopening on the motion of a claimant only, was the only interpretation that comported with due process.  <u>McCuin</u>, 817 F.2d at 174-75.   Any other interpretation would violate due process because the regulations did not provide adequate notice to claimants that their claim may be reopened past the sixty-day limit.  <u>Id.</u>  However, an argument that the present regulations give rise to due process concerns would fail because the revised version of 20 C.F.R. § 404.987 unequivocally provides authority and notice that the AC may reopen a case.  <u>See</u> <u>Nixon</u>, 2006 U.S. Dist. LEXIS 35854, at *12-13 ("The <u>McCuin</u> court's concerns stemmed, in good measure, from its observation that neither the then-operative regulations nor the language of notices then issued to victorious claimants apprised them of the distinct possibility that, anytime within the ensuing four years, their victory might be snatched from them upon reopening by the commissioner.   However, since the 1994 revision, the regulations have made crystal-clear to claimants not only that the commissioner possesses this power but also in exactly which set of circumstances she may choose to exercise it.") (internal citation omitted).

Given the fact that the initial decision was issued on December 19, 2004, (Tr. 33-36), and the case was reopened on October 10, 2008, (Tr. 306), this Court finds that the case was timely reopened within four years.

The second criterion for reopening requires the court to determine whether there was good cause.   20 C.F.R. § 404.988(b).   Good cause can be demonstrated if the evidence considered in making the decision clearly shows that an error was made, 20 C.F.R. § 404.989(a)(3), and this Court finds that ALJ Stolfo made such an error.

ALJ Stolfo stated that Gordon's earnings in 2003 did not amount to SGA after the deduction of impairment-related work expenses ("IRWE"), citing medicines, ambulance rides,

hospital trips, and cell phone expenses, but did not specify the amount of any of these IRWEs. (Tr. 25-27).  Because of the amount of her monthly earnings, Gordon would need IRWEs in the amount of at least $4,900[8] each month in order for her earnings to fall below the SGA threshold (which in 2003 was $800 per month).  (Tr. 304).  Gordon, however, only contends $322.91[9] in IRWEs in May 2003, and admitted that her earnings would still exceed the SGA threshold even after IRWEs.  (Tr. 84; see Tr. 304).  In light of the fact that no evidence in the record could support a finding that Gordon's IRWEs were in excess of $4,900 each month, ALJ Stolfo made a clear error in coming to this conclusion.

Gordon's Performance of SGA

The fact that a claimant receives DIB does not mean that they must remain unemployed. See 20 C.F.R. §§ 404.1592; 404.1592a.  Claimants are permitted to work so long as their earnings do not exceed a monthly specified threshold.  Id. § 404.1592(b).  Tables 1 and 2 of 20 C.F.R. § 404.1592(b) identify the amount of this monthly threshold for each year, and for the year 2000 the monthly limit was $200.00.  Id.  Once a claimant exceeds this threshold, benefits do not immediately cease.  Instead, benefits continue for at least nine months through what is known as the Trial Work Period ("TWP").  See id. § 404.1592.  The TWP is a nine month "period during which [the claimant] may test [the claimant's] ability to work," by performing services, "and still be considered disabled."  Id. § 404.1592(a).  Importantly, when computing whether the claimant has exceeded the monthly threshold amount for the TWP, the court focuses on the gross income, not the net income, because the regulations do not provide for deductions during the TWP.  See id. § 404.1576(f)(2) ("Impairment-related work expenses are not deducted

---

[8] This figure is calculated by taking the difference between Gordon's monthly income, (Tr. 84, 304), and the SGA threshold amount for the given year.

[9] Gordon contends a similar amount of IRWEs for each month between May 2003 and March 2004.  (Tr. 84, 304).

in computing your earnings for purposes of determining whether your work was 'services' as described in [the Trial Work Period provision]."). In other words, the court does not take into account any costs necessarily incurred in earning the monthly income when determining if the claimant has exceeded the specified amount during the TWP. The nine months permitted by the TWP in which a claimant's earnings can exceed the threshold do not have to be consecutive. Id. § 404.1592(a). Once the claimant depletes the nine months of the TWP, the claimant will then enter what is known as the Extended Period of Eligibility, also known as the reentitlement period. See id. § 404.1592a.

The Extended Period of Eligibility is a thirty-six month period which measures the performance of SGA. Id. § 404.1592a(b)(2)(ii). If SGA is performed in a particular month during this period, then the claimant is no longer entitled to DIB for that month.[10] Id. §§ 404.1592a(a), 404.1594(f)(1). Unlike the TWP, the calculation of SGA during the Extended Period of Eligibility takes into account some of the costs associated with the monthly earnings.[11] Id. § 404.1576(a). Thus, only if the earnings exceed the threshold amount after the deductions of IRWEs will the claimant be deemed to have performed SGA. Id. § 404.1592a(a)(1).

Beyond the numerical earnings, the performance of SGA is subject to the considerations of 20 C.F.R. § 404.1573 which examines (a) the nature of the work, (b) how well the individual performs the work, (c) whether the work was done under special conditions, (d) whether the individual is self-employed, and (e) the amount of time spent working. Id. § 404.1573(a)-(e).

---

[10] The first three months during the Extended Period of Eligibility are an exception to this rule. The claimant will still be entitled to DIB after the first month during which he or she performs SGA. See 20 C.F.R. § 404.1592a(a)(2)(i). The claimant will also still be entitled to DIB for the two following months. Id. The claimant remains entitled to DIB during the two grace months regardless of whether the claimant performs SGA during either of these months. Id.

[11] IRWEs are subject to the limitations outlined in 20 C.F.R. § 1576(b)-(c).

These considerations can affect whether the claimant's earnings are considered to be SGA, even if the earnings are beyond the SGA threshold.  Id.

Gordon's Trial Work Period

In the instant case, substantial evidence supports ALJ Masengill's finding that Gordon's TWP occurred from January 2000 until September 2000.  In making this finding, the ALJ noted the following pertinent facts.  Gordon was self-employed from 1997 through 2003, but her earnings did not achieve TWP level until the year 2000.  (Tr. 14-15).  In 2000, Gordon earned an average, gross monthly income of $309.00, (Tr. 15), which is in excess of the TWP threshold of $200.00, see 20 C.F.R. § 404.1592(b)(2)(i).  Thus, her TWP began in January of 2000 and lasted for nine months until September 2000 because she continued to earn more than $200.00 a month during this period.  (See Tr. 304).  Notably, no deductions are allowed during the TWP so Gordon's average, net monthly income is not relevant.  See 20 C.F.R. § 404.1576(f)(2).

Gordon's Extended Period of Eligibility

Once Gordon exhausted her nine months of TWP in September 2000, the Extended Period of Eligibility began in October 2000, lasting for thirty-six months until her entitlement terminated in October 2003.  Substantial evidence supports ALJ Masengill's finding that Gordon performed SGA starting in May 2003 and continuing until the termination of her entitlement as of October 2003.   During this period, Gordon was still entitled to DIB so long as her earnings did not amount to SGA.  Id. § 404.1592a(a).  In the years 2001 and 2002, Gordon's earnings did not amount to SGA because they did not exceed the threshold, and therefore she was still entitled to DIB.  Id. § 404.1592(b)(2)(i).  In May 2003, concurrent with Gordon's employment at the Mental Illness Education Project, Gordon earned a net[12] monthly income of $5,377.09, which

---

[12] Net income is the sum of the claimant's monthly income, less any IRWEs.  The net income figure is considered during the Extended Period of Eligibility but not during the TWP. See 20 C.F.R. § 404.1576(a), (f)(2).

substantially exceeded the SGA monthly limit of $800.00.   See U.S. Social Security Administration, Substantial Gainful Activity, http://www.ssa.gov/OACT/cola/sga.html (last visited Aug. 15, 2013).  Gordon was still entitled to DIB for the months of May 2003 (the cessation month) and July and August 2003 (the grace months) although her net monthly income during this period exceeded the SGA limit.  See 20 C.F.R. § 404.1592a(a)(2)(i).  She was not entitled to DIB in September 2003 because she earned a net income in excess of the $800.00 SGA limit and her grace period has expired.  Id.  Gordon's entitlement terminated as of October 2003 because that was the first month after her Extended Period of Eligibility ended in which she performed SGA.  Id. § 404.1592a(b)(2)(ii).  These monthly income figures, outlined by Gordon herself, (Tr. 304), provide substantial evidence to support the Commissioner's decision that Gordon performed SGA.

While it is true that the performance of SGA is a rebuttable presumption, Gordon did not satisfy her burden of showing that she worked under any special conditions or other considerations pursuant to 20 C.F.R. § 404.1573.  The record lacks evidence that Gordon was unable to do "ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work" and does not characterize her work experience as "a sheltered workshop" or "a patient in a hospital."  Id. § 404.1573(b)-(c).  In fact, the record suggests the contrary as evidenced by the fact that Gordon acted as the CEO of the Mental Illness Education Project for months after her superior was unable to return to work.  (Tr. 40).  Thus, ALJ Masengill's determination that Gordon did not rebut the presumption that she performed SGA pursuant to 20 C.F.R. § 404.1573, (Tr. 16), is supported by substantial evidence.  Because Gordon collected DIB during the month of September 2003 (the first month after the grace period), during which she undisputedly performed SGA, and from October 2003 until

April 2004, at which point her entitlement had terminated, Gordon was overpaid.   As ALJ Masengill noted, Gordon's misunderstanding of how the TWP works does not excuse her from earning more than the TWP and SGA thresholds.

IV.   CONCLUSION

For the foregoing reasons, I RECOMMEND that the court DENY Gordon's Motion for Summary Judgment (Docket No. 14) and GRANT the Commissioner's Motion to Affirm the Commissioner's Decision (Docket No. 17).[13]

/s/ *David H. Hennessy*
**David H. Hennessy**
**United States Magistrate Judge**

---

[13] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72(b)(2).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140 (1985).